UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | Criminal No.: 1:16-cr-00059 (EGS) |
| | ) | |
| | ) | |
| v. | ) | The Honorable Emmet G. Sullivan |
| | ) | |
| | ) | |
| DAVID G. BOWSER | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## GOVERNMENT'S SENTENCING MEMORANDUM

The United States, by and through its undersigned attorneys, respectfully submits this sentencing memorandum in the above-captioned case. For the reasons discussed herein and any other points and authorities made at the sentencing hearing, the Government recommends that the Defendant be sentenced to a term of imprisonment within the range of potential imprisonment he faces under the United States Sentencing Commission Guidelines ("U.S.S.G." or the "Guidelines").

### I. Procedural History

On April 6, 2016, a grand jury in the District of Columbia returned an eight–count Indictment against the Defendant. The Indictment alleged that the Defendant, who was the Chief of Staff for Congressman Paul Broun, used his position to misappropriate government funds to pay a consultant, Brett O'Donnell, for campaign–related services on the Congressman's House and Senate campaigns, and then obstructed the congressional inquiry by the Office of Congressional Ethics ("OCE") into that misappropriation. Accordingly, the Defendant was charged with one count of obstruction of proceedings, in violation of 18 U.S.C. § 1505 (Count


One); one count of theft of government property, in violation of 18 U.S.C. § 641 (Count Two); one count of concealment of material facts, in violation of 18 U.S.C. § 1001(a)(1) and (c)(2) (Count Three); and five counts of making false statements, in violation of 18 U.S.C. § 1001(a)(2) and (c)(2) (Counts Four through Eight).

On March 23, 2018, following a multi-week trial, a jury found the Defendant guilty of Counts One, Three, Four, Seven, and Eight. Dkt. 100. The jury acquitted the Defendant of Counts Five and Six and did not reach a unanimous verdict on Count Two. Id. The Court then declared a mistrial with respect to Count Two and later dismissed it with prejudice at the Government's request. Dkt. 128 at 1.

On July 17, 2018, the Court granted in part the Defendant's Motion for Judgment of Acquittal, Dkt. 72, and dismissed Count One with prejudice. Dkt. 128 at 1. Accordingly, the Defendant currently stands convicted of Count Three, concealment of material facts in violation of 18 U.S.C. § 1001(a)(1) and (c)(2), and Counts Four, Seven, and Eight, making false statements in violation of 18 U.S.C. § 1001(a)(2) and (c)(2).

## II.     Guidelines Calculations

The Defendant's Guidelines calculations set forth in the Presentence Investigation Report ("PSR"), Dkt. 150, which the Government agrees with, are as follows:

| | |
|---|---|
| Base Offense Level | 6 (§ 2B1.1(a)(2)) |
| Abuse of Position of Public Trust | +2 (§ 3B1.3) |
| Total Offense Level: | 8 |
| Criminal History Category I | 0 points |
| Guidelines Sentencing Range | 0-6 months |

**III.    Legal Principles**

When determining the appropriate sentence, a court should consider all of the applicable factors set forth in 18 U.S.C. § 3553(a).  See United States v. Gall, 128 S. Ct. 586, 596 (2007). The listed factors in 18 U.S.C. § 3553(a) include the following:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed –
> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> (B) to afford adequate deterrence to criminal conduct;
> (C) to protect the public from further crimes of the defendant; and
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> (3) the kinds of sentences available;
>
> (4) the kinds of sentence and the sentencing range established for –
> (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines –
> (i) issued by the Sentencing Commission ...; and
> (ii) that, . . . are in effect on the date the defendant is sentenced; ...
>
> (5) any pertinent policy statement –
> (A) issued by the Sentencing Commission ... and
> (B) that, . . . is in effect on the date the defendant is sentenced.
>
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
>
> (7) the need to provide restitution to any victims of the offense.

**IV.     Sentencing Recommendation**

The Defendant was an experienced political operative who worked in Congress and in political campaigns for years. The Defendant admitted in his own testimony during the trial that by the time he was Congressman Broun's Chief of Staff and his de facto campaign manager in 2012 to 2014, he was well aware of the various ethics rules and laws prohibiting the use of congressional staff and resources for campaign purposes. The Defendant also had experience with congressional investigations and was well aware of the prohibitions on concealing information from congressional investigators by making false statements and withholding evidence or encouraging witnesses to do so.

Despite this knowledge and experience, the evidence introduced at trial proved that the Defendant repeatedly directed congressional staff in Congressman Broun's office to use their official time and official government resources – such as computers, telephones, and the congressional office itself – for campaign purposes. For example, Christine Hardman, the former Communications Director for Congressman Broun, testified that as soon as she began working for the Defendant in 2013, he began directing her to do campaign work in the congressional office. By 2014, she explained that she spent almost all her time in the office working on Broun's Senate campaign at the Defendant's direction. Numerous emails introduced as exhibits at trial corroborated Hardman and further demonstrated that the Defendant did not hesitate to use the U.S. government resources available to Congressman Broun's office in order to fuel Broun's reelection campaign to the House in 2012 and his unsuccessful Senate bid in 2013-2014. The preponderance of the evidence similarly proved that the Defendant made the decision to hire and continue

employing Brett O'Donnell using congressional funds, at least in part, to provide services to Broun's campaigns.[1]

Furthermore, the evidence admitted at trial, as well as the jury's conclusion the Defendant was guilty of Count Three, proved beyond any reasonable doubt that the Defendant engaged in a scheme to conceal from OCE investigators the full nature and extent of O'Donnell's services for Congressman Broun's campaigns by withholding information and influencing and attempting to influence O'Donnell and other witnesses to make false statements and conceal evidence from OCE investigators.  The Defendant's conduct in this regard was a particular abuse of his position because as the Chief of Staff, the de facto campaign manager, and a seasoned professional far older than most of the staff working for him, he directed and encouraged employees that looked up to him to engage in this concealment scheme, thereby exposing them to potential professional risk and criminal and ethical liability.  Finally, the evidence admitted at trial, as well as the jury's conviction of the Defendant for making the false statements charged in Counts Four, Seven, and Eight, revealed beyond any reasonable doubt that the Defendant's claim to OCE investigators that the hiring and employment of O'Donnell was "purely on the official side" was not true.

The nature and characteristics of these offenses cannot be dismissed as being merely white collar crimes for which there was no real harm done beyond the loss of a few thousand government

---

[1]   Although the jury hung on Count Two, which charged the Defendant with knowingly converting congressional funds by hiring and employing O'Donnell for campaign purposes, in violation of 18 U.S.C. § 641, the Government submits that the evidence established by a preponderance that the Defendant committed this offense.  The Court can properly consider this conduct at sentencing.  See United States v. Dorcely, 454 F.3d 366, 371 (D.C. Cir. 2006) (agreeing with all other circuits that have considered the issue that a court may consider even acquitted conduct in imposing a sentence provided that the evidence proved by a preponderance that the conduct occurred and the sentence imposed is still within the range permitted under the statute of which the defendant was convicted).

dollars. The Defendant was entrusted with running one of the 435 offices of the members of the United States House of Representatives, a position that made him a critical piece of the machinery behind the functioning of American democracy. Yet instead of being a wise steward of taxpayer dollars and the trust conferred on him, the Defendant cynically used congressional resources and O'Donnell to further the political machine he ran for Congressman Broun, and then he sought to conceal what he had done when the media and the OCE began inquiring about it. The need to adequately punish these violations of the nation's trust cannot be overstated.

Moreover, both during his testimony at trial and in his interview for the PSR, the Defendant refused to accept full responsibility for these offenses. Indeed, when sentencing the Defendant, the Government strongly encourages the Court to recall and consider the incredulous explanations the Defendant gave in his testimony for his actions during the OCE investigation – explanations the jury resoundingly rejected in its verdict. For example, the Defendant lacked all credibility when he testified that he believed the OCE was only interested in finding out whether O'Donnell performed any official activity for Congressman Broun's office and so he was not concealing relevant information when he did not provide the OCE with a complete explanation of O'Donnell's campaign activity and encouraged congressional and campaign staff to withhold that information as well.

In addition to the importance of adequately punishing the Defendant for the seriousness of his crimes, it is important for the Court's sentence to also send a message that deters other congressional staff and government employees from misusing taxpayer dollars or believing they can conceal information and make false statements during congressional investigations. The House Ethics Manual, for example, provides information about what happened in past

prosecutions of congressional staff for violating U.S. law, so the Court's sentence imposed on the Defendant will doubtless serve as a warning for years to come to staff members entrusted with authority and responsibility like what the Defendant held.

Considering all of these factors, the Government submits that the Court should sentence the Defendant to a period of imprisonment within the 6 month range permitted under the Guidelines. If the Court sentences the Defendant to a period of probation or some other type of sentence that does not impose a period of imprisonment, it will neither adequately punish the Defendant for his actions and abuse of his position nor will it sufficiently deter such conduct by others in the future.[2]

**V.     Conclusion**

Based on the applicable Guidelines and a consideration of the sentencing factors provided in 18 U.S.C. § 3553(a), the Government recommends that the Defendant be sentenced to a period of imprisonment within the applicable range of up to 6 months.

---

[2] As the PSR notes, O'Donnell pled guilty to a one count Information that charged him with making false statements during his OCE interview, in violation of 18 U.S.C. § 1001, and he was recently sentenced to two years of probation and a $10,000 fine. As the Court is aware, O'Donnell testified at trial that the Defendant directed him to make false statements to the OCE about only being a volunteer on Congressman Broun's campaigns, and emails from the Defendant to O'Donnell conveying that talking point in advance of O'Donnell's OCE interview were admitted as exhibits during the trial. The Government encourages the Court to ensure that the Defendant's sentence is greater than O'Donnell's probationary sentence given the difference between O'Donnell's culpability and the Defendant's conduct for which he was convicted, as well as O'Donnell's acceptance of responsibility for his actions compared to the Defendant's unwillingness to acknowledge his illegal conduct.

        Respectfully submitted,

        AnnaLou Tirol
        Acting Chief
        Public Integrity Section


        By: _____*/s/*_____
        Todd Gee
        Deputy Chief
        Sean F. Mulryne
        Trial Attorney
        Public Integrity Section
        Criminal Division
        U.S. Department of Justice
        1400 New York Ave., N.W., 12th Floor
        Washington, D.C. 20005
        (202) 514-9752 (Gee)
        (202) 598-2816 (Mulryne)

Dated: October 29, 2018

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this date, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the attorney of record for the defendant.

/s/
Todd Gee
Deputy Chief
Public Integrity Section

Dated: October 29, 2018